ST. MARY'S ORPHAN ASYLUM *v.* JESSE R. POWELL, *Exr.*

Executors — Final Account of — Decree of Court Confirming.

    A decree of Chancery Court confirming a final account of an executor will not be disturbed when the testimony, as to certain items excepted to leaves it in doubt as to whether they should be allowed, but when the decree is in direct conflict with the report of a commissioner to whom the account had been referred, and whose report had been confirmed, it will be reversed.[1]

---

[1]

A decree of a chancellor will not be reversed in this court on the facts solely, unless the preponderance of the evidence against it be very great. The decree will not be set aside merely because it is doubtful whether it be right or wrong. Dillard *v.* Wright, 11 S. & M. 455.

If the evidence be exactly equiponderant, the decree will not be set aside, though it be in favor of the affirmant. Fox *v.* Matthews, 33 Miss. 433.

Nor will this court set aside the report of a commissioner in chancery,

Same — What Items Allowed — Erroneous Exercises of Judgment in the Pay-
ment of Claims.

 It is error to allow an executor credit in his final account for, a
penalty and costs caused by the default of the executor in not making
payment of a charge devolved on the estate by law. The consequences
of his erroneous exercise of judgment must rest on him and not on the
estate, even though he honestly made the mistake.[2]

 Dr. M. O'Reilly died in 1866 testate. J. R. Powell, appellee,
was named as executor of the will, and he qualified as such and
entered upon the duties of the office.

 St. Mary's Orphan Asylum, of Natchez, was made the residuary
legatee. The executor, after making a number of annual accounts,
filed his final account, showing an indebtedness to himself from

confirmed by the chancellor, assessing the hire of slaves, merely because
four witnesses against three prove the assessment too high. There should
be a clear preponderance against the report to warrant this court in setting
it aside. Trotter v. White, 4 Cush. 88.

 A decree manifestly against the evidence by deposition on which it is based,
will be reversed on appeal. Miss. Cotton Oil Co. v. Starling Smith Co., 23
So. 648.

 The decision of the chancellor on questions of fact arising on oral testi-
mony heard before him will not be reversed unless plainly wrong. Inter-
state Cattle Co. v. Lapsley, 24 So. 532.

 Where evidence as to value of property is conflicting, a master's report,
confirmed by the lower court, will not be disturbed on appeal. Millsaps v.
Chapman, 76 Miss. 942; 26 So. 369.

 A decree of a chancellor on conflicting evidence will not be set aside, where
there was any evidence to sustain it. Vaughan v. Commercial Bank, 18
So. 270.

2

 Where an executor, after being compelled to pay a bill of exchange on
which his testator was accommodation acceptor, fails to sue the drawer, he
is liable to the heirs for the loss, and he is not excused by the mere fact
that the drawer lived in another State. Klein v. French, 57 Miss. 662.

 He must show that he has done all that was reasonably within his power
to do in the effort to collect it. He is not excused from suing by the mere
fact that an attorney to whom he sent the claim for collection, advised him
that it was, on its face, barred by limitation, he having failed to inform the
attorney of the fact that the claim arose out of his having paid, within the
statutory period, a debt on which the testator was liable as surety, which
fact prevented the bar. Klein v. French, 57 Miss. 662.

 An administrator is liable for negligence, and he is bound to exercise the
same diligence and attention to the business he has voluntarily assumed which
discreet men bestow on their own business. Berry v. Parks, 3 S. & M. 625;
Baily v. Dilworth, 10 S. & M. 404; Smith v. Hurd, 8 S. & M. 682.

the estate of $333.27. Appellant filed numerous exceptions to his final account, and the matter was referred to a commissioner to state the account and report to the court. The commissioner heard testimony as to the correctness of the different items excepted to, and made his report to the court, which is partially set out in the opinion. Voucher No. 42, referred to in the opinion of the court, was a receipt for $269, excise tax on legacies imposed by United States Government, with costs and penalties for failing and refusing to pay this tax of $57.57. This item was allowed by the report of the commissioner. The reasons given by the executor for not paying the excise tax was that the attorney for appellant had advised him not to pay it, as he was in correspondence with a member of Congress and he thought the tax would be remitted; that the collector called on him several times, and he put him off hoping Congress would release him from the tax.

A final decree was rendered, overruling the exceptions filed by appellant to the commissioner's report and for the sum of $365.34 in favor of the executor. From that decree this appeal is taken by the St. Mary's Orphan Asylum.

APPEALED from Chancery Court, Madison county, E. G. PEYTON, Chancellor.

Reversed and remanded, November 21, 1881.

*Attorneys for appellant, Frank Johnston, and J. B. H. Hemingway.*

*Attorney for appellee, M. Green.*

Brief for appellants is not found in the record.

Brief of M. Green:

This was a controversy over the final account of Powell as executor of O'Reilly. The final account was rendered January, 1880, to which at July term, 1880, appellant filed elaborate exceptions to a master with specific directions upon what points to take proof and to report his conclusions with the proof to the next term. Those points were: to allow vouchers 18, 24, 33, and 38, but to disallow voucher 32 if for taxes on land already sold; if for tax on personalty, to allow it.

2. If vouchers paid without probate are valid and just charges, to allow same, otherwise not.

3. If executor paid any costs and damages accruing from non-performance of duty, to disallow such; if such costs and damages have been reimbursed by legatees, to disallow charge for same in account.

4. A note for $5,215.80 was not payable in gold; it was payable in legal tender currency.

5. That the executor should be charged with interest on his note to testator from maturity of note to time it was charged in account, at 6 per cent per annum.

6. If executor had used funds of estate or mingled them he should be charged with 6 per cent interest to time of starting account. The rule for calculation of interest should be applied when partial payments are made, but compound interest should not be allowed and the master shall take and return testimony as to 1st, 2d, and 3d points above stated.

7. The commissioner to take and report to the court any testimony adduced by exceptant or executor showing any moneys received by executor on account of rents, issues, profits, and disposition of the real and personal estate of said testator and to state in his account the account thereof.

The commissioner took a large amount of testimony and reported it to the court, and reported that on voucher 1, executor was only entitled to a.$270 or $300 voucher, and charged executor with additional interest in his note, $493.23. To this report, the exceptions complained of were filed.

The exceptions complained of relate to matters of the final account, but were not embraced in the exceptions filed to the final account. I submit that it was too late to raise new questions on the final account by exceptions to the *report of the master*. Any errors apparent on the face of the master's report are proper grounds of exception, but where there have been exceptions to the final account, and these exceptions are referred, it is incompetent to make exceptions to the final account by exceptions to the report of the master. Nebbitt *v.* Cunningham, 5 Cush. 292.

As to the first exception noted by counsel, the court will perceive that the facts do not sustain the exception. The executor charges himself with the $160 in the third annual account. The $75 was shown by a paper "O" not in record to have been for repairing a

gin and press; and the notes about $300 were not paid. The whole amount of rent was about $600; and this $160 and $75 is the $235 rent which the exception says should be charged.

As to second exception noted by counsel, viz: that the executor should be charged with amount of U. S. revenue taxes as per voucher No. 42, and which should have been debited to him under third direction of order of reference, counsel's own argument is a sufficient reply. He says that as some of the legatees refunded these taxes, *it must be presumed all did,* and hence *on this presumption* the executor should be charged. It was paid because the collector was about to arrest the executor and carry him to Jackson, and then under the advice of Mr. Luckett, appellant's solicitor, Powell paid it. There is no proof that the amount so paid was ever paid by legatees; on the contrary the record shows they received their legacies in full, and as the account was allowed, it would be strange to surcharge and falsify on a *presumption* created here by counsel.

The third exception noted is that the executor should have been charged with $300 as a credit on O'Leary legacy. This upon the opinion of C. W. O'Leary. There is no proof that any sum was credited on the O'Leary legacy. It is denied that the voucher for $605 signed by C. W. O'Leary contained a credit of $300. I think the proof is overwhelming the other way. C. W. O'Leary does not testify that the $300 credit was deducted. He proves that the amount represented by those receipts was paid before the receipts were given. It is supposed by counsel that Dr. O'Leary sent a letter containing an order to deduct $300, and that the executors should have produced this order. This is a pure assumption. O'Leary testifies that he never read the note. He says he had a settlement when he carried the note and presumes something of that kind was in it. The rule on the production of documents is that they *must be shown to exist,* and in the possession of the party, and then if not produced upon demand their contents will be presumed against the holder. Is this amount to reverse a decree on a report of a master, confirmed by the court, on a speculation of counsel? I suppose that there was a sum deducted in that settlement, but it was for amounts previously paid, and not for debts due by O'Leary to O'Reilly. The money received by O'Leary to build O'Reilly a room adjoining his house was a *gift* and not the subject of a credit.

As to the fourth exception in regard to calculating interest, it is in strict accord with the decree of reference and is correctly computed. The executor had charged himself with one year's interest, $313.04. The note was dated December 20, 1865, and this would bear interest on full face to December 20, 1866. The commissioner found that some payments had been made by the executors before December 20, 1866, which would reduce the amount down to $4,982.82 as in his hands at that time. Hence, he calculated interest on the principal from payment to payment, and running all out and footing same up for the total interest. This is in strict accord with the rule for computation of partial payments, and is the mode adopted by merchants for an interest account. Counsel here does not seem to seriously contend, to the contrary contenting himself with a mere mention and recital of this exception.

Not content with the exceptions taken below, counsel, in conclusion, thinks he has found a grave error, which was not seen below, and that in the small item of $775, which he thinks from a similarity of amounts must have been credited twice. Human ingenuity is boundless and if its invention were as perfect as its fancy is vivid, the world would revel in countless perfections. The law, however, calls upon litigants to except to the actions of the court below, and when an account is filed to which exceptions are filed, it is conclusively presumed that the parts of an account not excepted to are correct and this because no complaint is made of them.

Two different sets of exceptions were filed below, and John Whelan and Judge Handy were the agents and attorneys of the appellants, and if these two gentlemen did not see that this executor was trying to swindle these orphans out of the large sum of $775, under the thin veil of duplicate receipts, then it is a vain task for counsel here. There was no such question raised below; there was no proof on this point; there was no objection to the allowance of the receipt of Luckett for $775, dated at different times. On the wildest presumption, counsel try to show that Powell deliberately swore falsely to his account, and stole $775 from the estate, without the slightest proof save a close approximation of the dates, and the identity of the amounts. "It would seem that Powell took a temporary receipt from Luckett and requested that the treasurer should give a further receipt to be used as a voucher." Without a particle of proof is this pre-

sumption of rascality against this old gentleman indulged. Counsel *presumes* (there is no proof) that both these items of $775 arose from the land sale. One receipt states it to be for land, and the other does not say whence the money was derived. Then, upon the presumption that both were for land, he draws his conclusions.

I deny there is any proof to sustain the imputation of dishonesty asserted.

If there was proof (which I deny), still there was no complaint of this item below, and by excepting to it, it was not objected to— no proof was taken on the point; it was not tried; and I submit that this court will not allow an entirely different case to be tried here, and this upon evidence taken to sustain and prove a different issue. This not being in issue below, no attention was directed to it, and no opportunity was afforded Mr. Powell to show that these amounts were not the same. To *presume* that he had acted the rascal is asking this court to do more than it would do.

Opinion.—Cooper, J.:

Whether the executor collected a greater amount than he had charged against himself for the rent of the lands of testator, and whether he collected from Dr. O'Leary the sum of $300, or any part thereof, is by the testimony left in doubt; we would therefore not disturb the decree but for other items in which error is apparent.

By the final account as filed by the executor, it appeared that the estate was indebted to him in the sum of $333.27; the commissioner, to whom the account was referred, reported that the executor was chargeable with the additional sum of $493.23, and that the sum of $30 ought to be deducted from the credits claimed by him; this report was confirmed. Subtracting the sum of $333.27, claimed by the executor, from the aggregate amount found against him by the commissioner, left him indebted to the estate in the sum of $189.96, instead of $129.96, as stated in the decree.

It was error to allow the executor a credit for the penalty and costs named in voucher 42; these items were caused by the default of the executor in not making payment of a charge devolved on the estate by law, and however honestly he may have acted, the consequences of his erroneous exercise of judgment must rest on

him, not on the estate. The reasons given by him for his failure to pay the tax before the penalty attached are sufficient to excuse his action in the premises.

No point was made in the court below that the two vouchers, 30 and 39, represented the same credit; from the statements in the amended accounts, and from the wording of the vouchers, it seems possible, if not probable, that these receipts refer to the same payment. If appellants desire to contest the point, they can do so in the court below.

*Decree reversed* and cause remanded.